

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-25-00430-CV

**SAN ANTONIO WATER SYSTEM**, an Agency of the City of San Antonio,
Appellant

v.

**BEXAR MEDINA ATASCOSA COUNTIES WATER CONTROL AND IMPROVEMENT DISTRICT NUMBER 1**, George Weimer, President, Bob Roberts, Jr., Vice President, Christopher Friesenhahn, Secretary/Treasurer, Dustin Navarro, Board Member, Garrett Wilson, Board Member, Morris Salzman, Board Member, Gordon Hitzfelder, Board Member, Brian Sullivan, Operations Manager, and Bonnie Tapp Sallee, Office Manager, Each in Their Official Capacities,
Appellees

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2023CI11920
Honorable Cynthia Marie Chapa, Judge Presiding

Opinion by:     H. Todd McCray, Justice

Sitting:        Irene Rios, Justice
                Lori Massey Brissette, Justice
                H. Todd McCray, Justice

Delivered and Filed: July 8, 2026

AFFIRMED

Appellant San Antonio Water System ("SAWS") challenges the trial court's decision to

grant the plea to the jurisdiction filed by Bexar Medina Atascosa Counties Water Control and

Improvement District Number 1 ("BMA") and its board members and managers (the "BMA Directors"). We affirm.

## BACKGROUND

As this is a memorandum opinion and the parties are familiar with the facts of the case, we will not recite them here except as necessary to advise the parties of this court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

BMA and SAWS are parties to a take or pay water supply agreement ("Agreement").[1] Under the Agreement, BMA is obligated to provide up to 19,974 acre-feet (approximately 6 billion gallons) of untreated water from Medina Lake to SAWS, "when, and if, water is available in sufficient quantities." In turn, SAWS is obligated accept delivery from BMA regardless of the water quality, and is obligated to pay BMA for 19,974 acre-feet of water whether it takes it or not. However, if the quantity of water available to BMA is insufficient to meet the demands of the contract, BMA is obligated to grant SAWS a credit for any shortfall.

In its Second Amended Petition SAWS asserts that in recent years, it has chosen to stop receiving water from BMA due to the poor quality of the water—a result of prolonged periods of extremely low water in Medina Lake.

> In April 2013, Medina Lake water quality became too poor to be treated at the SAWS ultrafiltration plant which was, in part, due to low lake levels. SAWS therefore elected to stop taking water under the Agreement. Given the unreliable quantity and consistently poor quality of the available water, SAWS could not justify or responsibly commit over $30 million in necessary upgrades to its ultrafiltration plant. The water supply was neither firm, nor dependable, nor of sufficient quality to warrant further capital investment.

---

[1] In 1991, BMA entered into a Water Sale Agreement with Bexar Metropolitan Water District (BexarMet). After entering additional agreements in 1992, 1995, 1999, and 2003, BMA and BexarMet restated and consolidated all their agreements into a single Amended and Restated Water Supply Agreement in 2007. In 2012, BexarMet was dissolved and SAWS assumed BexarMet's rights and obligations under the Agreement.

SAWS alleges that, since the Agreement requires it to pay for water it is not receiving when BMA does not have sufficient, quality water to comply with the Agreement, these payments amount to a gratuitous grant of public money to BMA that violates article III, section 52(a) of the Texas Constitution (the "Gift Clause"). Based on the assertion that these payments from SAWS to BMA violate the Gift Clause, SAWS has also asserted *ultra vires* claims against the BMA directors, claiming that accepting those payments and approving budgets funded in part by those payments, are unlawful acts and, therefore, must be *ultra vires* acts outside the authority of BMA's directors.

In response to the suit, BMA filed a plea to the jurisdiction asserting the trial court lacked jurisdiction because (1) BMA has governmental immunity; (2) the BMA Directors are immune because SAWS has not properly pled an *ultra vires* claim; and (3) the PUC has exclusive jurisdiction over SAWS' claims. The trial court granted the plea to the jurisdiction and dismissed the underlying proceeding. This accelerated appeal followed.

## STANDARD OF REVIEW

"We review a trial court's ruling on a plea to the jurisdiction under a de novo standard." *County of Bexar v. Steward*, 139 S.W.3d 354, 357 (Tex. App.—San Antonio 2004, no pet.) (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)). "In applying a de novo standard of review to a standing determination, reviewing courts construe the pleadings in the plaintiff's favor, but we also consider relevant evidence offered by the parties." *Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020).

A plea to the jurisdiction typically "challenges whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). As the plaintiff, SAWS carries the burden to demonstrate that the trial court has subject-matter jurisdiction over its claims. *Dallas Area Rapid*

*Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). To determine if they have met that burden, we consider the facts alleged in the petition and, "to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties." *Id*.

"When the pleadings are challenged, we review whether the alleged facts, if true, affirmatively demonstrate jurisdiction; because we construe pleadings liberally in favor of the pleader, we will grant a plea to the jurisdiction without an opportunity to replead only if the pleadings affirmatively negate jurisdiction." *Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022). But vague and conclusory statements within a pleading are insufficient to support jurisdiction; otherwise, the jurisdictional inquiry would become meaningless. *See Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 660 (Tex. 2007); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (holding a plaintiff must allege "facts that affirmatively demonstrate the court's jurisdiction to hear the cause"); *Cnty. of El Paso v. Flores*, 677 S.W.3d 31, 43 (Tex. App.— El Paso 2023, pet. denied) ("Generally speaking, self-serving, speculative, and conclusory statements of fact or law are insufficient to raise a material issue of fact; thus, we look to additional evidence in the record to determine whether a fact issue exists.").

## ANALYSIS

### *Applicable Law on Governmental Immunity*

Subject matter jurisdiction is essential to a court's authority to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Governmental immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225-26; *see Jones*, 646 S.W.3d at 325 ("At the plea to the jurisdiction stage, governmental officials may challenge jurisdiction based solely on the pleadings or may challenge jurisdictional facts.").

Governmental immunity has two components-immunity from liability and immunity from suit. *Tooke v. City of Mexia,* 197 S.W.3d 325, 332 (Tex. 2006). Governmental immunity protects political subdivisions of the State, including counties, cities, and school districts. *Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivis. Prop./Cas. Joint Self–Ins. Fund,* 212 S.W.3d 320, 324 (Tex. 2006); *City of Houston v. Williams*, 353 S.W.3d 128, 134 n. 5 (Tex. 2011) (distinguishing governmental and sovereign immunity). A political subdivision is immune from suit unless immunity has been expressly waived by the legislature. *Lower Colorado River Auth. v. City of Boerne, Tex.*, 422 S.W.3d 60, 64 (Tex. App.—San Antonio 2014, pet. dism'd) (citing *Williams,* 353 S.W.3d at 134). Only "clear and unambiguous" language within a statute will be interpreted as waiving immunity, and it has long been recognized that the power to waive immunity from suit lies solely with the legislature. TEX. GOV'T CODE § 311.034; *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

"In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Whitley*, 104 S.W.3d at 542. It is well established in Texas that bare allegations alone are not sufficient to invoke a waiver of sovereign or governmental immunity. *State v. Lueck*, 290 S.W.3d 876, 883–84 (Tex. 2009). Conclusory pleadings do not provide sufficient jurisdictional facts to determine if the trial court has jurisdiction. *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010) (per curiam); *see Garcia*, 372 S.W.3d at 638 ("[S]ome inquiry is necessary because if . . . plaintiffs were allowed to stand on talismanic allegations alone, the constraining power of pleas to the jurisdiction would practically be eliminated."); *Lueck*, 290 S.W.3d at 884 ("Allowing a plaintiff's pleadings to stand on bare allegations, alone, without allowing the State to challenge plaintiff's compliance with the immunity statute, would practically eliminate the use of pleas to the jurisdiction[.]").

**I.** **SAWS' Claim for Declaratory Relief is Barred by Governmental Immunity.**

In its first claim, SAWS requests a judicial declaration that the Agreement is void, asserting that it violates Article III, Section 52(a) of the Texas Constitution and that the terms of the Agreement are in violation of public policy. We conclude this claim is barred by governmental immunity.

A. BMA has Governmental Immunity.

BMA argues it is a political subdivision of the state with governmental immunity. We agree.

As a water control and improvement district, BMA is a political subdivision created under article XVI, section 59 of the Texas Constitution. *See* TEX. WATER CODE § 51.011; *see also* TEX. WATER CODE § 51.011 ("A water control and improvement district may be created under and subject to the authority, conditions, and restrictions of either Article III, Section 52, of the Texas Constitution, or Article XVI, Section 59, of the Texas Constitution."). "[P]olitical subdivisions created under Section 59a of Article XVI of the Constitution . . . are not classed with municipal corporations, but are held to be political subdivisions of the State, performing governmental functions, and standing upon the same footing as counties and other political subdivisions established by law." *Willacy Cnty. Water Control & Improvement Dist. No. 1 v. Abendroth*, 177 S.W.2d 936, 937 (1944); *see also Banker v. Jefferson Cnty. Water Control & Imp. Dist. No. One*, 277 S.W.2d 130, 133 (Tex. App.—Beaumont 1955, writ ref'd n.r.e.) ("Districts, including Water Control and Improvement Districts . . .have been consistently recognized by our courts as being political subdivisions of the State[.]") (citing *Willacy*, 177 S.W.2d at 937). Accordingly, BMA has governmental immunity. *See Bexar-Medina-Atascosa Ctys. Water Control & Improvement Dist. No. 1 v. Bandera Cnty. River Auth. & Groundwater Dist.*, No. 04-16-00536-CV, 2017 WL

4014703 (Tex. App.—San Antonio Sept. 13, 2017, pet. denied) (recognizing BMA's status as a political subdivision of the state with governmental immunity).

B. There is no waiver of immunity to determine the validity of the Agreement.

BMA asserts that there is no waiver of its governmental immunity that would give a trial court jurisdiction to determine the validity of the Agreement. We agree.

It is well-established that "declaratory judgment suits seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities are suits against the State." *Klumb v. Houston Mun. Employees Pension Sys.*, 458 S.W.3d 1, 12 (Tex. 2015) (quoting *IT–Davy*, 74 S.W.3d at 855). "That is because such suits attempt to control state action by imposing liability on the State." *Bexar Metro. Water Dist. v. Educ. & Econ. Dev. Joint Venture*, 220 S.W.3d 25, 28 (Tex. App.—San Antonio 2006, pet. dism'd) (quoting *IT–Davy*, 74 S.W.3d at 855). Consequently, immunity is not waived for declaratory judgment claims seeking to establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities. *Id*. (citing *IT–Davy,* 74 S.W.3d at 855–56).[2] Accordingly, "governmental immunity will preclude the suit if its purpose or effect is to cancel or nullify a contract made for the benefit of the state." *City of San Antonio v. Von Dohlen*, 612 S.W.3d 503, 507 (Tex. App.—San Antonio 2020), *rev'd on other grounds sub nom. Dohlen v. City of San Antonio*, 643 S.W.3d 387 (Tex. 2022).

---

[2] While the UDJA contains a waiver of governmental immunity from certain suits, this waiver is limited to claims challenging the validity of ordinances or statutes. *City of Pearsall v. Tobias*, No. 04-15-00302-CV, 2016 WL 1588400, at *2 (Tex. App.—San Antonio Apr. 20, 2016, no pet.) (mem. op.) (citing TEX. CIV. PRAC. & REM. CODE § 37.006(b)). Section 271.152 of the Texas Local Government Code provides that "[a] local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract." TEX. LOC. GOV'T CODE § 271.152. However, SAWS has not asserted a breach of contract claim, and this Court has previously held that section 271.152's waiver does not extend to claims for declaratory relief relating to contracts. *See City of Boerne*, 422 S.W.3d at 67 ("The Supreme Court stated in *Tooke* that Chapter 271 only waives immunity for suits that seek the remedies specifically set out in the statute. . . . Based on the plain language of section 271.152, the legislature has not expressly and unambiguously waived immunity from suit for a declaratory judgment claim.") (citing *Tooke*, 197 S.W.3d at 345).

It was SAWS' burden to identify a waiver of BMA's governmental immunity and plead facts establishing jurisdiction. It has not done so. SAWS does not contend (and appropriately so) that its claim comes within the UDJA's implied limited waiver of immunity that permits declaratory claims challenging the validity of ordinances or statutes. No other waiver is alleged or supported by this record. Thus, this cause of action is barred by governmental immunity; and the trial court did not err in granting BMA's plea to the jurisdiction on this claim.

## II. SAWS' Ultra Vires Claim is Barred by Governmental Immunity.

SAWS asserts in its second claim that the BMA Directors are committing *ultra vires* acts by "voting to approve and administer annual budgets funded by SAWS's payments under the Agreement, despite full knowledge that BMA has been unable to provide any usable water in return." We conclude that SAWS has failed to properly assert an *ultra vires* claim.

The fact that SAWS purports to allege *ultra vires or* "unconstitutional" conduct by the BMA Directors does not alone mean that it has avoided sovereign immunity and invoked a trial court's inherent jurisdiction. A proper *ultra vires* claim must allege that the officer acted without legal authority or failed to perform a purely ministerial act. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). "Ministerial acts are those where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015). "Discretionary acts on the other hand require the exercise of judgment and personal deliberation." *Id*. Thus, an *ultra vires* claim may not be maintained if the officials' acts are within their discretion; the plaintiff must show that the officers failed to perform a purely ministerial act or acted *outside* the scope of their allotted discretion. *Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022)*.* An act

within the officials' discretion is protected by immunity even if it is erroneous. *Hall v. McRaven*, 508 S.W.3d 232, 242–43 (Tex. 2017).

If a claim fails to meet this standard, it follows that the claim is actually seeking to judicially override the sovereign will embodied in the governmental acts and decisions made within delegated authority—to "control state action"—and thereby implicates the sovereign's immunity. *See Heinrich*, 284 S.W.3d at 372. Thus, we necessarily turn to the question of the power and duties granted to the BMA Directors to decide if SAWS has asserted a valid *ultra vires* claim.

Section 49.155(a) of the Water Code authorizes BMA to "pay out of bond proceeds *or other available funds* of the district all expenses of the district authorized by this section." TEX. WATER CODE § 49.155(a) (emphasis added). In addition to the "other available funds" language from subsection (a), subsection (d) explains that "[t]hese payments may be made from money obtained from the issuance of notes or the sale of bonds issued by the district or out of maintenance taxes *or other revenues of the district*." TEX. WATER CODE § 49.155(d) (emphasis added). Further, under section 49.057 of the Water Code, the board is "responsible for the management of all the affairs of the district" and is authorized "to purchase all materials, supplies, equipment, vehicles, and machinery needed by the district to perform its purposes." TEX. WATER CODE § 49.057 (a), (f). To this end, the BMA Board is mandated to "adopt an annual budget." TEX. WATER CODE § 49.057 (b).

While SAWS alleges the BMA Directors are acting without lawful authority the only actions SAWS points to—creating a budget that reflects revenue and spending that revenue—are permissible under the unambiguous text of the Water Code. Thus, SAWS' *ultra vires* claim is entirely contingent on its assertion that the payments BMA receives under the Agreement violate

the Gift Clause such that the BMA Directors are acting beyond their authority by allocating the funds BMA receives under the Agreement.

However, SAWS fails to allege how the payment to BMA can be deemed gratuitous—and in violation of the Gift Clause—given that BMA is itself a governmental entity obligated by its own statutory limits to only allocate funds towards public purposes. *See Bennett v. Tarrant Cnty. Water Control & Imp. Dist. No. One*, 894 S.W.2d 441, 450–51 (Tex. App.—Fort Worth 1995, writ denied) ("As an agency of State government, the Water District can only do that which is authorized by the statute creating it. For that reason, the Water District serves only governmental functions.") (citations omitted).

Additionally, it is undisputed that the Agreement was made pursuant to Chapter 791 of the government code which authorizes and governs interlocal cooperation contracts which are expressly made for the benefit of the state. *See* TEX. GOV'T CODE § 791.001 ("The purpose of this chapter is to increase the efficiency and effectiveness of local governments by authorizing them to contract, to the greatest possible extent, with one another and with agencies of the state."); TEX. GOV'T CODE § 791.026 (a)(1) ("A municipality, district, or river authority of this state may contract with another municipality, district, or river authority of this state to obtain or provide part or all of [its] water supply[.]"). Additionally, the parties to the Agreement are specifically authorized to enter into this type of water supply agreement. *See* TEX. WATER CODE § 49.213 ("A district may enter into contracts . . . [for] the purchase or sale of water[.]"); TEX. WATER CODE § 51.150(b) (authorizing a water district to "enter into a contract with an authorized water district . . . [to convey] all or part of a water supply").

Accordingly, SAWS fails to show how the payments to BMA are for a gratuitous, non-governmental purpose. *See Borgelt v. Austin Firefighters Ass'n, IAFF Loc. 975*, 692 S.W.3d 288,

301 (Tex. 2024) ("A challenged expenditure satisfies § 52(a)'s Gift Clause when (1) the expenditure is not gratuitous but instead brings a public benefit; (2) the predominant objective is to accomplish a legitimate public purpose, not to provide a benefit to a private party; and (3) the government retains control over the funds to ensure that the public purpose is in fact accomplished."); *Rd. Dist. No. 4, Shelby Cnty. v. Allred*, 123 Tex. 77, 89 (1934) ("If this donation is a mere gratuity, it is prohibited by section 51 of article 3, supra. On the other hand, if the donation is made and granted to the road district for a governmental purpose, it is not a gratuity, and not prohibited by such constitutional provision."). [3]

Because SAWS' factual allegations fail to show that the BMA Directors failed to perform a purely ministerial act or acted outside the scope of their statutory authority, it follows that SAWS is actually seeking to control state action. *Heinrich*, 284 S.W.3d at 372; *Turner*, 646 S.W.3d at 325; *see also Creedmoor–Maha Water Supply Corp. v. Tex. Comm'n on Envtl. Quality*, 307 S.W.3d 505, 515–16 (Tex. App.—Austin 2010, no pet.) ("[I]f the plaintiff alleges only facts demonstrating acts within the officer's legal authority and discretion, the claim seeks to control state action, and is barred by sovereign immunity.").

While SAWS may frame this as an *ultra vires* claim, "[t]he central test for determining jurisdiction is whether the 'real substance' of the plaintiff's claims falls within the scope of a

---

[3] SAWS conclusory assertion that BMA's budget allocations "are affirmative, unlawful acts to allocate and expend millions of dollars of SAWS ratepayer funds in a manner that convers no measurable benefit on the public," does not salvage its *ultra vires* claim. First, to the extent that this could be read as asserting a violation of the Gift Clause, SAWS fails to identify a single budgetary allocation that is not for a public purpose. It is well established in Texas that conclusory pleadings do not provide sufficient jurisdictional facts to determine if the trial court has jurisdiction. *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010) (per curiam). Second, even if SAWS identified a purported gratuitous expenditure by BMA, the potential Gift Clause violation would be wholly unrelated to the payments made pursuant to the Agreement given that BMA's purported misuse of funds post-receipt does not retroactively render the original payments illegal. *See, e.g.*, *DeLay v. State*, 410 S.W.3d 902 (Tex. App.—Austin 2013), *aff'd*, 465 S.W.3d 232 (Tex. Crim. App. 2014) (explaining that an agreement involving transfers of corporate donations to a PAC, purportedly in violation of the Election Code, would not taint funds received and in a bank account prior to the agreement). SAWS provides no authority, nor are we aware of any, holding that the original sourcing or receipt of funds may be rendered improper or illegal by the subsequent use of those funds.

waiver of immunity from suit." *Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 389 (Tex. 2011). "And a litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit." *Id.*, at 388 (citing *Heinrich*, 284 S.W.3d at 370–71; *IT–Davy*, 74 S.W.3d at 855).

As already discussed above, suits against state officials seeking to establish a contract's validity are considered suits against the state because such suits attempt to control state action.

> Contracts are a well-established means through which the state or local governments effectuate their policy directives regarding governmental functions. Furthermore, contracts may provide financial benefits for governmental entities, and thus, will have implications for budgetary and appropriations processes. . . . By interfering with these policy and budgetary decisions regarding the use of state resources, a suit to invalidate the logo sign contract implicates sovereign immunity.

*Tex. Logos, L.P. v. Tex. Dep't of Transp.*, 241 S.W.3d 105, 120 (Tex. App.—Austin 2007, no pet.) (citations omitted).

The Texas Supreme Court has historically regarded these immunity principles as barring suits to invalidate a contract made for the benefit of the state. *Id.*; *see*, *e.g.*, *W.D. Haden Co. v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838, 840 (1958) (noting the clear distinction between permissible *ultra vires* claims and impermissible claims seeking to control the state, including suits "to enforce specific performance of a contract made for the state, or to enjoin the breach of such contract, or to recover damages for such breach, *or to cancel or nullify a contract made for the benefit of the state*.") (emphasis added).

Accordingly, "where 'the only plausible remedy' for the plaintiff's claim is invalidation of a government contract, governmental immunity bars both suit and liability." *Von Dohlen*, 612 S.W.3d at 507; *see also Chisholm Trail SUD Stakeholders Group v. Chisholm Trail Special Util. Dist.*, No. 03-16-00214-CV, 2017 WL 2062258, at *10 (Tex. App.—Austin May 11, 2017, pet. denied) ("[T]he Stakeholders Group's pleaded *ultra vires* claims asserted against the Directors

ultimately seek to invalidate the Agreements and, thus, seek retrospective relief and are barred by governmental immunity.") (collecting cases). *see* also *Griffin v. Hawn*, 161 Tex. 422, 424, 341 S.W.2d 151, 152 (1960) ("Where the purpose of a proceeding against state officials is to control action of the State or subject it to liability, the suit is against the State and cannot be maintained without the consent of the Legislature.").

Here, the parties to the Agreement are government entities. As already stated, BMA is a political subdivision of the state. So was BexarMet (SAWS predecessor in interest to the Agreement), and so is SAWS itself. *See Bexar Metro. Water Dist. v. Educ. & Econ. Dev. Joint Venture*, 220 S.W.3d 25, 28 (Tex. App.—San Antonio 2006, pet. dism'd) ("Bexar Met is a political subdivision of this State[.]"); *San Antonio Water Sys. v. Matiraan, Ltd.*, 692 S.W.3d 545, 555 (Tex. App.—San Antonio 2023, pet. denied) ("SAWS is cloaked in immunity absent a waiver of such immunity[.]"). And the Agreement is an interlocal cooperation contract made for the benefit of the state. *See* TEX. GOV'T CODE § 791.001. Accordingly, we conclude SAWS' *ultra vires* claim seeks to invalidate a contract made for the benefit of the state and, therefore, impermissibly seeks to control the state. Thus, the *ultra vires* claim is barred by governmental immunity. *See W.D. Haden Co.*, 308 S.W.2d at 840; *Tex. Logos*, 241 S.W.3d at 120 (Tex. App.—Austin 2007, no pet.) (citations omitted). Therefore, the trial court did not err in granting BMA's plea to the jurisdiction on this claim.

## III. SAWS' Inability to Show a Waiver of BMA's Immunity Cannot be Cured through Repleading.

SAWS' failure to demonstrate a waiver of governmental immunity precludes the trial court's subject matter jurisdiction over these claims. We must therefore determine whether to affirm the dismissal of those claims or remand the case to the trial court to give SAWS an opportunity to replead. When repleading cannot cure the jurisdictional defects, we need not allow

the plaintiff to replead. *See Tex. Dep't of Ins., Div. of Workers' Comp. v. Brumfield*, No. 04-15-00473-CV, 2016 WL 2936380, at \*5–6 (Tex. App.—San Antonio May 18, 2016, no pet.).

Employing a commonsense examination of the substance of SAWS' claims, and the relief sought, it is evident that the crux of this dispute is whether or not the Agreement violates the Gift Clause. Because the legislature has not established a waiver of governmental immunity for claims seeking to invalidate a contract made for the benefit of the state, we conclude repleading would not cure SAWS' inability to show a waiver of BMA's governmental immunity. *See Creedmoor-Maha*, 307 S.W.3d at 526 (citing *Miranda,* 133 S.W.3d at 227 for the proposition that "if pleadings affirmatively negate existence of jurisdiction, then plea to the jurisdiction may be granted without allowing opportunity to amend").

## CONCLUSION

Because SAWS has failed to demonstrate a waiver of governmental immunity, the trial court lacked subject matter jurisdiction over SAWS' claims. We therefore conclude that the district court did not err in granting appellees' plea to the jurisdiction. The district court's judgment granting the plea to the jurisdiction and dismissing the underlying suit is affirmed.

H. Todd McCray, Justice